IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERISOURCEBERGEN DRUG CORPORATION, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 16-6106 |
| v. | : | |
| | : | |
| PRIMROSE PHARMACY, LLC; KARL BLASS-SCHULTZ;  KARL BUCHOLZ; ALTHEA GROUP, LLC, | : : : | |
| Defendants. | : | |

**MCHUGH, J.**                                                                                             **February 1, 2017**

**<u>MEMORANDUM</u>**

      Plaintiff Amerisourcebergen Drug Corporation ("ABDC") has sued Defendant Primrose Pharmacy ("Primrose") for various alleged breaches of contract related to ABDC's exclusive right to act as Primrose's intermediary in the processing of health care reimbursements. Primrose moves to dismiss, contending that ABDC must arbitrate its claims. Because Primrose relies upon an arbitration clause that does not bind ABDC, its motion will be denied.

      ABDC collects and consolidates reimbursement payments made to Primrose Pharmacy for prescription benefits claims. This dispute began after one large payor of such reimbursements, CVS-Caremark ("Caremark"), conducted an audit of Primrose's claims for reimbursement and concluded that Primrose had overcharged Caremark by more than three million dollars. If true, this could place ABDC at risk under the array of contracts governing relationships between the parties. To protect its interest, ABDC invoked what it contends is a contractual right to hold in escrow reimbursement payments due to Primrose, because of concern that ABDC might be required to refund overpayments to Caremark.

Shortly after ABDC began withholding payments to Primrose, the flow of reimbursement payments into ABDC on Primrose accounts – which generally had amounted to around $500,000 each month – dramatically decreased to the point where "almost no" reimbursements destined for Primrose were paid to ABDC.  ABDC therefore asserts that, in violation of the exclusivity provisions in various contracts with ABDC, Primrose began "secretly and improperly processing [its] claims through related pharmacies."  Complaint at 10.

Various contracts govern the relationship between ABDC and Primrose, and between Primrose and third parties.  One such contract under which ABDC has sued – the Master Program Agreement ("MPA") between ABDC and Primrose – incorporates the Caremark Provider Manual, which governs relations between Primrose and Caremark, the entity allegedly overcharged.  That document has an expansive arbitration clause as follows:

> **Any and all disputes between Provider [ Primrose] and Caremark** [including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents and assigns (collectively referred to in this Arbitration section as "Caremark")], including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks, will be exclusively settled by arbitration. This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual.

*Caremark Provider Manual at 44-45* (emphasis added).

According to Primrose, this Manual was incorporated into the MPA Term Sheet, which was then incorporated into the MPA, leading Primrose to argue that ABDC must arbitrate this dispute. Assuming such "incorporation" took place, Primrose's argument lacks merit.  In its submissions to the Court, Primrose simply ignores the language defining the scope of the arbitration clause. On its face, the clause applies only to disputes between Primrose and Caremark.  The alleged incorporation does not change the plain language of the clause limiting

the entities to which it can apply.  Nor does it intuitively make sense that an arbitration clause from an agreement governing the conduct of a "provider" would govern the actions of a payment processor such as ABDC.

The question currently before me is whether there "is a valid agreement to arbitrate between the parties."  *Century Indem. Co.  v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 527 (3d Cir. 2009).  Or, as the Court of Appeals stated in *Medtronic Ave., Inc. v. Advanced Cardiovascular Systems, Inc*., 247 F.3d 44, 54 (3d Cir. 2001), "for a court to enter an order compelling arbitration there must be sufficient evidence that the parties consented to arbitration in an express agreement."  In no sense is the language of this subsidiary agreement sufficient to constitute such an express agreement, particularly when the Credit Agreement which forms the main basis for ABDC's suit expressly consents to jurisdiction in the Eastern District of Pennsylvania.  Exh. A to Compl.  Nothing in *Rent-A-Center West v. Jackson,* 561 U.S. 63 (2010) can rescue Defendants from their inability to identify a valid agreement to arbitrate between these parties.

   Primrose further argues that arbitration is necessary because the "gateway issue" – whether ABDC has incurred or will incur liability to Caremark on Primrose's behalf – concerns a potential dispute between Primrose and Caremark.  But the essence of this suit is ABDC's contention that Defendants have violated the exclusivity agreement between them.  Although Plaintiff might have been motivated to assert a contractual breach because of concern about an underlying liability, the basic factual question is whether Primrose is unlawfully diverting reimbursements.  The consequences of any such diversion is an issue of damages.  That issue may in turn depend upon whether Caremark is correct about Primrose's alleged

overcharges, and such a dispute will presumably be arbitrated.[1]  None of that changes the fact that ABDC never agreed to arbitrate disputes with Primrose – not through the incorporated clause pertaining to disputes between Primrose and Caremark nor through any other contract.

ABDC cannot be forced to arbitrate its claims based on promises made by other companies to each other.  Accordingly, Primrose's Motion to Compel Arbitration is denied.  An appropriate order follows.

      /s/ Gerald Austin McHugh
United States District Judge

---

[1] Primrose argues in its Reply that if forced to litigate in this court, it could be held doubly liable for the amounts due under the audit – once to ABDC in this suit, and again to Caremark in arbitration. ECF Doc. 11 at 6. Avoiding double recovery is a problem easily addressed by proper case management and framing of issues for resolution.